IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **RICHARD HIGBIE**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-2636-L** |
| | § | |
| **JOHN KERRY, in his official capacity** | § | |
| **as Secretary of State**, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant's Motion for Summary Judgment, filed on June 17, 2013. After careful consideration of the motion, response, reply, record, and applicable law, the court, for the reasons herein stated, **defers** ruling on Defendant's Motion for Summary Judgment.

Plaintiff Richard Higbie ("Plaintiff" or "Higbie") brought this lawsuit on October 5, 2011, against Hillary Rodham Clinton ("Clinton") in her official capacity as Secretary of State, alleging employment discrimination by an agency operated under the United States Department of State ("State Department"). On May 10, 2013, pursuant to Federal Rule of Civil Procedure 25(d), Secretary of State John Kerry ("Defendant" or "Kerry") was substituted in place of Clinton. In his Second Amended Complaint, which is the live pleading in this case, Plaintiff asserts claims for retaliation and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), *as amended*, 42 U.S.C. § 2000e, *et seq.* Plaintiff's Second Amended Complaint also asserted a claim for breach of contract; however, upon Plaintiff's motion, the court severed this claim from the action and transferred it to the Court of Federal Claims on February 5, 2013.

Higbie has been employed by the State Department since 1998. He currently serves as a criminal investigator in the State Department's Bureau of Diplomatic Security, which is essentially the security and law enforcement arm of the State Department. At all times relevant to this lawsuit, Higbie worked in the Dallas Resident Office, which is headed by the Houston Field Office.[1] In this lawsuit, Higbie alleges that because of prior complaints of disability discrimination he filed with the Equal Employment Opportunity Office ("EEO") in 2001, State Department officials later retaliated against him, beginning in December 2008.[2]

Defendant moved for summary judgment on Plaintiff's remaining claims for retaliation and hostile work environment under Title VII. After the court *twice* extended Plaintiff's deadline to respond to Defendant's summary judgment motion, Plaintiff timely filed his response on July 18, 2013. On August 1, 2013, Defendant filed objections to Plaintiff's summary judgment evidence and a reply. On August 8, 2013, Higbie filed an Opposed Motion for Leave to 1) Authenticate Documents Submitted in Support of Response to Summary Judgment and 2) File Amended Response to Defendant's Motion for Summary Judgment. Although Higbie labeled this motion as one to "authenticate" documents submitted in response to Defendant's summary judgment motion, the court determined that he really sought to reopen discovery, which would necessarily require the

---

[1] The Bureau of Diplomatic Security has "field offices" that are primarily responsible for conducting criminal investigations and background investigations, protecting foreign dignitaries, and maintaining liaisons with local law enforcement. Field office operations are divided into eight multi-state regions within the United States, with each region being administered by a single field office located in a city in the region. There may be one or more subsidiary "resident offices" located in other cities within the region. A resident office falls below the level of a field office within the chain of command. Each resident office is under the authority of the applicable field office for the region.

[2] Specifically, in 2001, Higbie complained that he suffered discriminatory, adverse actions at the hands of Tim Haley, the Special Agent in Charge in the Houston Field office at the time, because of his association with his daughter who was allegedly disabled in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. Higbie filed suit in federal court, and his claims were ultimately resolved in a settlement agreement that was finalized in 2005.

**Memorandum Opinion and Order - Page 2**

court to amend the current scheduling order. Finding that no good cause existed to amend the scheduling order at this late stage of the proceedings, the court denied Plaintiff's motion for leave.

In Plaintiff's response to Defendant's Motion for Summary Judgment, Higbie states that he "brought this action of retaliation pursuant to the Americans with Disabilities Act ("ADA") and the Rehabilitation Act." Pl.'s Response to Def.'s Mot. for Summ. J. 1. In a footnote following this sentence, Higbie further states that "[t]o the extent that title vii [sic] is alleged, Higbie nonsuits such causes and proceeds as outline [sic] here." *Id.* at 1, n.2. The court understands Plaintiff's response to nonsuit the only two remaining claims in this action and, to raise, for the first time, a new claim and theory of retaliation under the ADA and the Rehabilitation Act. In his response, Plaintiff also appears to allege a claim for "a continuing hostile retaliatory work environment," however, it is unclear whether he also raises this under the ADA and the Rehabilitation Act. As Plaintiff expressly nonsuited any such causes to the extent that they were alleged under Title VII, the court also understands this to be a new claim, raised by Higbie for the first time in his response to the summary judgment motion. In essence, Plaintiff attempts to unilaterally amend his complaint for a third time, well after the expiration of the January 29, 2013 deadline to file any motions requesting amendment of pleadings, and without seeking leave of court. Plaintiff may not do this.

"Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *S & W Enters., L.L.C. v. Southwest Bank of Alabama*, 315 F.3d 533, 536 (5th Cir. 2003). The court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civil P. 16(b)(4). Because Plaintiff is represented by counsel, his response is not entitled to a liberal construction such as that ordinarily afforded to *pro se* litigants. *See Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986). Therefore, the court declines to construe his response as a motion

**Memorandum Opinion and Order - Page 3**

requesting leave to amend his pleadings. Even if the court were to liberally construe Plaintiff's response as embodying a motion for leave to amend his complaint, he has not established that good cause exists to allow such a modification to the scheduling order's deadline for amendment of pleadings at this late stage in the litigation. The good cause standard requires the "party seeking relief to show that the deadlines [could not] reasonably be met despite the diligence of the party needing the extension." *S & W Enters.,* 315 F.3d at 536. "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id*. In deciding whether to allow an untimely amendment, a court considers "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id*. (citations and internal quotation marks omitted). Moreover, courts "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a motion for summary judgment." *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (citations omitted). This is so because "[m]uch of the value of summary judgment procedure . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 and n.2 (5th Cir. 1992).

It appears to the court that Plaintiff asserted claims under the wrong statute in his Second Amended Complaint, as well as in his Original Complaint and First Amended Complaint, and he now attempts to correct his mistake at the summary judgment stage. As previously stated, Plaintiff is not *pro se* and has had several opportunities to correct this mistake, as he has twice amended his

complaint in this action. Had he been diligent in prosecuting this action, this mistake would have been corrected with the previous two amendments to his complaint prior to this action proceeding to the summary judgment stage. Even if, for some reason unknown to the court, Higbie could not have discovered his mistake any earlier, if he was diligent, at the least he should have requested leave to amend his complaint for a third time instead of attempting to amend his complaint surreptitiously in a footnote in his response to the summary judgment motion. Furthermore, he should have demonstrated to the court "that the delay was due to oversight, inadvertence or excusable neglect." *See Little*, 952 F.2d at 846 ("An amendment that a party raises late in the pre-trial life of a lawsuit has a significant tendency to disrupt trial proceedings. Therefore, . . . if the delay in filing a motion for leave to amend is particularly egregious, the burden shifts to the moving party to demonstrate that the delay was due to oversight, inadvertence of excusable neglect.") (citation and internal quotation marks omitted).

Because the court does not find that good cause exists to modify its scheduling order and has not consented to Plaintiff amending his complaint a third time, as required by Federal Rule 16(b), it may not consider Plaintiff's purported claims of retaliation and "continuing hostile retaliatory work environment" under the ADA and the Rehabilitation Act, as they are not properly before the court. "A claim which is not raised in the complaint but rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *see also Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990) ("As the district court correctly noted, this claim was not raised in [plaintiff's] second amended complaint but, rather, was raised in his response to the defendants'

motion for summary judgment and, as such, was not properly before the court.").[3] Because Plaintiff raises his retaliation and "continuing hostile retaliatory work environment" claims under the ADA and the Rehabilitation Act for the first time in his response to the motion for summary judgment, the court holds that these claims are not properly before it.

As Plaintiff has expressly nonsuited the only two claims that remained in this action, for which the government has sought summary judgment, no claims remain for the court to adjudicate. If no claims remain, Defendant's summary judgment motion is moot. Ordinarily, the only thing remaining for the court to do is to dismiss this action; however, in light of the potential prejudice to Plaintiff if it were to dismiss this action, the court will allow him the opportunity to explain, in writing, his failure to file a timely motion for leave to amend his pleadings. Further, Plaintiff shall fully engage in and discuss the four factors set forth in the *S & W Enterprises* case on page four of this opinion.

For the reasons herein stated, the court **determines** that Plaintiff has nonsuited his Title VII claims for retaliation and hostile work environment and **defers** ruling on Defendant's Motion for Summary Judgment. Further, the court **orders** Plaintiff to respond to its directive as set forth in the preceding paragraph. In light of the fast-approaching trial date, Plaintiff shall file the required

---

[3] The Fifth Circuit has also indicated that raising a claim for the first time in a response to a motion for summary judgment constitutes a waiver of such a claim. *See, e.g., Criner v. Texas—New Mexico Power Co.*, 470 F. App'x 364, 371 (5th Cir. 2012) ("[W]e hold that [Plaintiff] waived her disparate impact claims by presenting them for the first time in her response to a motion for summary judgment.") (citing *Cutrera v. Board of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)); *Saucedo Falls v. Kunkle*, 299 F. App'x 315, 318 n.3 (5th Cir. 2008) ("[Plaintiff] did not raise the retaliation claim in her complaint; as the district court noted and the Plaintiff does not contest, it was first raised in her response to Defendants' motion for summary judgment. Accordingly, the retaliation claim is waived.") (citing *Cutrera*, 429 F.3d at 113).

written response by **5:00 p.m., Thursday, September 5, 2013**.  Defendant may file a response by **5:00 p.m., Tuesday, September 10, 2013.**  The court will not extend these deadlines.

**A number of motions for sanctions has been filed in this action and frankly, the court questions the wisdom of the filing of some of these motions.  These motions have consumed an inordinate amount of scarce judicial resources.  Accordingly, no further motions may be filed without leave of the court.  If a motion is filed and it is not substantially justified, the court will impose monetary sanctions against the offending party or offending attorney, or any other sanctions it deems appropriate.**

As a final matter, the court **suspends** the deadlines for the filing of pretrial materials until it determines whether Plaintiff should be allowed to amend his pleadings.

**It is so ordered** this 29th day of August, 2013.

*[signature: Sam A. Lindsay]*
Sam A. Lindsay
United States District Judge